## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**JOHN DOE**                                                                **PLAINTIFF**

**v.**                                                            **No. 1:19CV151-MPM-RP**

**JOB REYES RIVERA, ET AL.**                                          **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of John Doe, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that defendant Brett Watson provided inaccurate information in support of arrest warrants and to the grand jury in the criminal prosecution of the plaintiff. In addition, the plaintiff alleges that defendant Watson provided text messages and statements of dubious origin to prevent the plaintiff from filing a civil suit. Defendant Watson has filed a motion [167] for summary judgment; the plaintiff has responded, and the matter is ripe for resolution. For the reasons set forth below, Watson's motion [167] will be granted, and judgment will be entered in his favor in all respects.

## Procedural History

As many of the claims and defendants in this case have been dismissed, the court will provide a relevant, abbreviated, procedural history. Plaintiff John Doe [ "Doe"] filed his Complaint on August

19, 2019, and an Amended Complaint on October 15, 2019.[1]  In his Complaint, Doe alleged the

following relevant claims against Defendant Watson ["Watson" or "Detective Watson"]:

 a.  "Because there was not probable cause to obtain an arrest warrant for extortion, Defendant Watson violated Smith's Fourth Amendment rights to be free from illegal arrest."[2]

 b.  "Because there was not probable cause to obtain an arrest warrant for felony HIV exposure, Defendant Watson violated Smith's Fourth Amendment rights to be free from illegal arrest."[3]

 c.  "Because there was not probable cause to obtain an indictment against Smith for felony extortion in an amount over five hundred ($500.00), Defendant Watson violated Smith's Fourth Amendment rights."[4]

 d. "Because there was not probable cause to obtain an indictment against Smith for felony HIV exposure, Defendant Watson violated Smith's Fourth Amendment rights."[5]

 e. "Count Eleven Conspiracy under 42 U.S.C. 1983".[6]  "Defendant Watson, Defendant Rivera, and Defendant Unknown Co-Conspirator #1 conspired together under color of law to violate Smith's constitutional rights by fabricating and using text messages and providing false statements in order to prevent Defendant Rivera from being sued in the state courts of Mississippi for her failure to return money that was loaned to her."[7]

---

[1][Docs. 1 & 8].

[2] *Id.* at ¶234.

[3] *Id.* at ¶241.

[4]*Id.* at ¶247.

[5]*Id.* at ¶254.

[6]*Id.* at ¶255.

[7]*Id.* at ¶258.

Watson answered on February 19, 2020.[8]  In early 2020, Doe and all the Defendants engaged in significant motion practice.[9]  Over the summer, this Court ruled on all pending motions.[10]  Ultimately, on July 31, 2020, this Court entered a Scheduling Order setting discovery parameters and deadlines.[11]  On August 26, 2020, this Court issued its Memorandum Opinion dismissing all other Defendants, with prejudice, and some of Doe's claims against Watson.[12]

As such, Watson is the only remaining Defendant, and the only claims remaining against him are:

> (1) Watson provided inaccurate information leading to the issuance of arrest warrants for Doe in absence of probable cause ;
>
> (2) Watson provided incomplete or unreliable evidence and testimony to the grand jury to obtain indictment in the absence of probable cause; and,
>
> (3) Watson provided text messages and statements of dubious origin to prevent Doe from filing a civil suit against Job Rivera.[13]

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[8][Doc. 60].

[9]*See generally* Docket.

[10] *Id.*

[11] [Doc. 129].

[12] [Doc. 136].

[13]*See* [Doc. 136 pg. 13].

matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof,

the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the*

*record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

On or about August 24, 2017, Detective Watson received a report from Job Rivera that he[14] was being harassed, via text message, by Doe.[15] Rivera told Detective Watson that he and Doe had been in a relationship, and he was receiving threatening text messages from Doe after their relationship ended.[16] Rivera explained to Watson that Doe: (1) threatened to send nude photographs to his friends, family, and to people at the university he attended; (2) had contacted Rivera's mother and sister, despite not previously having their contact information; and (3) threatened a law suit if Rivera did not return money Doe gave to Rivera as a birthday present.[17]

After speaking with Rivera, Detective Watson received permission to do a forensic extraction on Rivera's phone to locate text messages Doe allegedly sent.[18] On August 24, 2017, Sergeant Rick

---

[14] Throughout Doe's Complaint, Doe refers to Rivera as "she." In Rivera's pleading to this Court, he refers to himself as "he;" as such, the court will do the same. *See* [Doc. 106].

[15] *See* Exhibit A, Criminal Investigative file of Watson, DEF 3.

[16] *Id.*

[17] *Id.* This money was later returned via VENMO, a phone application used to transfer money between users. *Id.*

[18] *See* Exhibit A, Criminal Investigative file of Watson, DEF 16.

Sharp performed this forensic extraction, and afterwards, the phone was returned to Rivera.[19] From this extraction, Detective Watson learned that Doe contacted Rivera from a number of different phone numbers.[20] Also from the extract, Detective Watson confirmed what Rivera told him about receiving threats from Doe.[21] Doe's texts confirmed what Rivera said that Doe had threatened to involve Rivera's friends and family and to post Rivera's nudes[22] – and that Doe used these threats to try and extort sexual favors from Rivera.[23] Detective Watson also learned that prior to coming to see him, Rivera had confronted Doe about these threats and Rivera's fear of Doe.[24] In response, Doe told

---

[19] *Id.*

[20] *See* Exhibit B, composite of Text Messages. For example, from 601-550-2729, Doe sent numerous "selfies" or pictures of himself. *Id.* at DEF 642-45. From 601-738-2697, Doe sent the following message "Hey this is David. I changed cell phone numbers today. My old number, 601-550-2797, no longer works. This is my new number." *Id.* at DEF 650. He then proceeded to send instructions on where Rivera can find books written by Garcia- Smith, one of Doe's many aliases. *Id.* at DEF 683-87. From this number Doe and Rivera also exchanged nude photos. *Id.* at DEF 728-32;743-48. From 601-383-0061, Doe sent messages about going to San Diego for Medical Treatment and also images of a Second Unopposed Motion for Continuance of Revocation Hearing in *United States of America v. David Garland Atwood, II* criminal case number 3:15-cr-45-HTW-FKB filed 08/16/2017 and submitted by David Garland Atwood, II Defendant, a case involving Doe, again, under one of his many aliases. *Id.* DEF 324 and 315-318, respectively.

[21] *Id.* DEF 486; 506-521. These texts came from the 601-383-0061 number, the same number that previously sent Rivera a copy of one of Doe's many legal proceedings.

[22] *Id.* On August 16, 2017, Doe sent Rivera a text saying: "I'm sorry I cussed you out and threatened you." He continued by saying "I will not promise I won't get mad and cuss you out again but I will PROMISE not to threaten you again or involve your family in anything between us." *Id.* at DEF 208-09. On August 23, 2017, Doe sent a message saying "Why shouldn't I go post your nude f***cking pics all over the GD place and send them to your parents." *Id.* at DEF 486.

[23] *Id.* On August 23, 2017, a few minutes after Doe sent the text about posting Rivera's nude pictures all over the place and sending them to his parents, Doe wrote: "I just want my piece of a** once or twice a week too." *Id.* at DEF 494.

[24] Exhibit B, composite of Text Messages. On August 23, 2017, Rivera sent Doe a long text saying: "You know why I have been so hesitant with you? Because I'm f***ing scared of you. Ever since the day you threatened me, I've been scared. You attacked me verbally so bad my mental and self-esteem are very low. And when you said those things, it hurt a lot. Yes, I know I hurt you. I'm

Rivera "It's too late now any (sic) Job."[25]  Doe also told Rivera that he was going to start "punishing"

Rivera by sending out a video of him smoking marijuana to the Starkville police.[26]  Unless Rivera

"kept his word" and continued to have sex with Doe.[27]  Terrified, Rivera made his report to Detective

Watson on August 24, 2017, the next day.[28]

After taking Rivera's report, Detective Watson requested Doe's criminal history.[29]  Upon

receipt, he learned that Doe had numerous felony convictions, was on probation, and, most

importantly, that he used several aliases.[30]  This further confirmed what Detective Watson learned

from Rivera's phone, as now he had confirmation from legal records that Doe, Garcia- Smith,

Atwood, and Garland Atwood were all the same people.[31]

---

sorry.  But the fact you still attacked me.  If you truly liked someone, I would never say any of the
things you've said to me even in anger, and even today you showed me your true colors too.  If it
doesn't go your way you will lose it and destroy me.  What if we get in an argument in the future and
you attack?  That's what I am scared of David.  I do not appreciate this nude crap either.  That's so
rude.  I would never post yours ever, and you even got your friend to attack me. . . .  Can we please be
civil adults?  Please, David."  *Id.* at DEF 440.

[25] *Id.*  DEF 452.

[26] *Id.* DEF 508-09; 517.

[27] *Id.* DEF 489-520.

[28]  *See* Exhibit A, Criminal Investigative file of Watson, DEF 3-4.

[29] *Id.* DEF 17-110.

[30] *Id.*

[31] *Id.*

Detective Watson spoke again with Rivera on August 25, 2017.[32] At that time, Rivera "stated definitively" that Doe had been in Starkville on at least three different occasions.[33] Moreover, Rivera told Detective Watson that he and Doe met on Grindr, a popular online app, but that Starkville was the only place that he and Doe had ever met in person.[34] Finally, Rivera told Detective Watson that: (1) Doe had an Apple iPhone and a black laptop; (2) Doe also had a flip phone, which was allegedly used for his work at a law office in Jackson; (3) Doe drove a tan Toyota and a black Infinity in his visits to Starkville but claimed to own a Mercedes; and (4) Doe used a disposable credit card to order food from Pita Pit.[35] Detective Watson followed up on Rivera's information and found that CLEAR listed both an Infiniti and a Mercedes Benz as both being owned by possible relatives associated with Doe.[36] This further bolstered Rivera's statements. *Id.*

Based on this new information, Detective Watson contacted Doe's probation officer, Shameka Horton.[37] After speaking with Officer Horton, Detective Watson learned that Doe was not allowed to travel outside of the Southern District of Mississippi without permission and that Doe was not allowed

---

[32] Exhibit A, Criminal Investigative file of Watson, DEF 8.

[33] *Id.* DEF 8.

[34] *Id.*

[35] *Id.*

[36] *See* Exhibit C, Affidavit of Detective Watson, ¶14.

[37] *See* Exhibit A, Criminal Investigative file of Watson, DEF 3-4.

to possess any internet-capable devices.[38]  Most concerning to Detective Watson, Officer Horton

informed him that Doe admitted in open court to being HIV positive.[39]

Based on his investigation, Detective Watson filed two general affidavits.[40]  In the first, he

alleged that Doe "did willfully, unlawfully, purposely and feloniously, attempt to obtain favors and

U.S. currency by threatening to send via electronic communication/ expose explicit photographs and

videos of Job Rivera."[41]  In the second, he alleged that Doe "did willfully, unlawfully, knowingly and

feloniously, expose another person, Job Rivera, to a human immunodeficiency virus (HIV) while in

Oktibbeha County, State of Mississippi, contrary to the form of the statute in such cases made and

provided."[42]

On September 19, 2017, Watson faxed a letter to the U.S. Marshals Service, Officer Horton,

and AUSA Dave Fulcher asking all parties to place a detainer on Doe based on these warrants.[43]  On

the same day, District Judge Henry T. Wingate granted a Petition for Warrant or Summons for

Offender Under Supervision, and issued an arrest warrant for Doe. [44]  Doe turned himself in to the

U.S. Marshals.[45]

---

[38] *Id.*

[39] Exhibit A, Criminal Investigative file of Watson.  Detective Watson verified this fact through Court Transcripts.  *See* DEF 123-183.

[40] *Id.* DEF 116-117.

[41] *Id.* DEF 116.

[42] *Id.* DEF 117.

[43] *Id.* DEF 118-119.

[44] *See* 3:15-CR-00045 Docket at #276; Doc. 1 at _ XX.

[45]  *See* 3:15-CR-00045 Docket at #277; Doc. 1 at _ 140.

Over the course of three days, Judge Wingate held a hearing on the revocation of Doe's supervised release.[46]  Both Rivera and Officer Horton testified and the Court found Doe "guilty of all violations of supervised release conditions . . . as alleged in the amended petition."[47]  As such, Plaintiff's supervised release was revoked again for "twice traveling outside the judicial district without permission, being charged for making threats, and being charged with willfully exposing another person to the Human Immunodeficiency Virus ("HIV")."[48]

According to Doe's Complaint, on January 5, 2018, he was indicted by an Oktibbeha County Grand Jury for Extortion and Willfully Exposing Another Person to HIV.[49]  Detective Watson testified at the grand jury and testified consistent with his investigative report, the statements taken from Rivera, the information located on Rivera's telephone, and the information he provided to get the general warrant.[50]  Mr. Doe has offered no proof that Watson provided incomplete or unreliable

---

[46]  As this court noted, [Doc. 136], revocation was requested, and granted, based on the following:  (1) speeding; (2) communicating with a U.S. Probation Officer using an internet capable device; (3) having an active Facebook account; (4) twice traveling outside the judicial district without permission; (5) being charged for making threats; and (6) being charged with willfully exposing another person to Human Immunodeficiency Virus ("HIV").

[47]  *See* 3:15-CR-00045 Docket at 12/21/2017 ("Minute Entry for proceedings held before District Judge Henry T. Wingate:  Status Conference as to David Smith-Garcia held on 12/20/2017. All parties of record were present.  The Court heard argument on Defendant's 2255 petition and concluded the revocation hearing. The Court found Defendant guilty of all violations of supervised release conditions 1, 2, 3, 5, 6, and 7 as alleged in the amended petition.  Defendant was sentenced to 36 months imprisonment, to run consecutively for a total of 72 months imprisonment within the custody of BOP, to be followed by a re-imposed life term of supervised release."); [Doc. 1 at 142-84].

[48]  [Doc. 136 at pg. 3].

[49]  *See* [Doc. 1 at §§186-87].

[50]  *See* Exhibit C, Affidavit of Detective Watson, ¶21.

evidence and testimony to the Grand Jury to obtain indictment in the absence of probable cause.[51]
The indictment remains sealed.[52]

## The Plaintiff's Claims and Defendant's Arguments

As set forth above, the three claims remaining in this case are against the sole remaining defendant, Detective Brett Watson:

(1) That he provided inaccurate information leading to the issuance of arrest warrants for the plaintiff in the absence of probable cause;

(2) That he provided incomplete or unreliable evidence and testimony to the grand jury to obtain a state indictment; and

(3) That he provided text messages and statements of dubious origin to prevent the plaintiff from filing a civil suit against defendant Job Reyes Rivera.

In his summary judgment motion, Detective Watson argues that: (1) He is entitled to qualified immunity as to each of these claims; and (2) He is did not violate any of the plaintiff's rights.

## Qualified Immunity and Merits of Case

### Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes

---

[51] *Id.* at ¶ 22.

[52] Exhibit C, Affidavit of Detective Watson, ¶ 23.

of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As discussed below, defendant Watson's actions were objectively reasonable; as such, the plaintiff's claims against him will be dismissed under the doctrine of qualified immunity.

## Probable Cause

Detective Watson had ample probable cause to support an arrest warrant for Mr. Doe based upon his attempt to extort Rivera to obtain favors or an unspecified amount of U.S. currency. First, Detective Watson had the statement of a complaining witness, Rivera, who willingly signed over his phone for a forensic investigation.[53] In his statement, Rivera, told Watson that "the suspect has become threatening despite being asked to stop. [Rivera] states that the suspect had threatened to post nude photographs of the victim and send the photographs to the victim's family, friends, and Mississippi State University."[54] When Detective Watson received the forensic investigation of

---

[53] Exhibit A, Criminal Investigative file of Watson, DEF 16.

[54] *Id.* DEF 3-4.

Rivera's phone, he found multiple text messages that confirmed Rivera's statements.[55]  Though these text messages came from different cell phone numbers, reliable, independent, evidence that showed that each number belonged to Doe.[56]

Mr. Doe alleges that Detective Watson should not have trusted this evidence because he was incarcerated during some of the times messages were sent – a thus did not have access to a cellular phone.  The court notes, however, that, while inmates in state and federal prison are not *allowed* to have cell phones, they often gain access to cell phones, nonetheless.[57]  In addition, Mr. Doe claims that the messages contained references to Rivera's dishonesty and lies and should have led Watson not to believe him. [58]  This argument is simply Mr. Doe's interpretation of the text messages' effect on

---

[55] *See* Exhibit C, Affidavit of Watson, ¶¶10, 14.

[56]  *See* Exhibit B, composite Exhibit of Messages.  Again, from 601-550-2729, Doe sent numerous "selfies" or pictures of himself. *Id.* at DEF 642-45.  From 601-738-2697, Doe sent the following message "Hey this is David. I changed cell phone numbers today. My old number, 601-550-2797, no longer works. This is my new number." *Id.* at DEF 680.  He then proceeded to send instructions on where Rivera can find books written by Garcia- Smith, one of Doe's many aliases. *Id.* at DEF 683-87.  Finally, from this number Doe and Rivera exchanged nude photos. *Id.* at DEF 728-32;743-48.  From 601-383-0061, Doe sent messages about going to San Diego for medical treatment and also images of a Second Unopposed Motion for Continuance of Revocation Hearing in United States of American vs. David Garland Atwood, II criminal case number 3:15-cr-45-HTW-FKB filed 08/16/2017 and submitted by David Garland Atwood, II Defendant, a case involving Doe, again, under one of his many aliases. *Id.* at DEF 324 and DEF 315-18, respectively.

[57] *United States v. Richardson*, 2019 U.S. Dist. LEXIS 114152, *9, (D.C. S. Car. July 10, 2019) ("This court can take judicial notice of the fact that in prisons throughout the United States, possession of cell phones by inmates leads to significant disciplinary problems both inside the prison and outside the prison.")

[58] [Doc. 1 at ¶227].

Rivera's credibility. Detective Watson, however, met with Rivera and had Rivera explain the wording and context of the text messages.[59]

Further, Mr. Doe alleges that he had submitted to a polygraph examination regarding Rivera's allegations and passed that examination,[60] but Detective Watson has no knowledge of such a polygraph.[61] Next, Mr. Doe alleges that Rivera used illegal drugs, and thus could not be trusted.[62] Mr. Rivera admitted his drug use to Detective Watson, telling him that Doe was extorting Rivera for money.[63] This actually bolsters Rivera's credibility because he was willing to come to the Sheriff's Department and disclose his own illegal drug use in order to get help.[64] Also, the author of the texts used exposure of Mr. Rivera's drug use to extort money and sexual favors from him; thus, law enforcement officers needed that information to investigate the allegations.

Mr. Doe also claims that Rivera lied about the type of car Doe drove.[65] But, according to Detective Watson, Rivera told him about *three* types of cars that Doe drove or claimed to drive.[66]

---

[59] *See* Exhibit C, Affidavit of Watson, ¶12.

[60] [Doc.1 at ¶229].

[61] *See* Exhibit C, Affidavit of Watson, ¶24.

[62] [Doc. 1 at ¶230].

[63]*See* Exhibit C, Affidavit of Watson, ¶¶6, 13.

[64] *Id.*

[65] [Doc. 1 at ¶233].

[66] *See* Exhibit A, Criminal Investigative file of Watson, DEF 8.

Once Detective Watson was able to link Mr. Doe to two of these three cars, this actually bolstered Rivera's credibility.[67]

Indeed, in his Complaint, Mr. Doe admits that some of the text messages on Rivera's phone "could be construed as threatening to send the alleged nude and illegal drug-use photographs of Defendant Rivera if Defendant Rivera did not agree to continue the relationship with the person, alleged to be Smith, using the 601-383-0061 number."[68]  This is the very basis for the warrant Detective Watson requested:  "attempt[ing] to obtain favors ... by threatening to send via electronic communication/expose explicit photographs and videos of Job Rivera."[69]  Mr. Doe's own statement thus supports the existence of probable cause to obtain the warrant.

The remaining issue regarding qualified immunity as to the probable cause claims is whether a reasonable officer would have believed the 601-383-0061 number was Mr. Doe's.  He alleges that there was *no* evidence found that this number was associated with him.[70]  This is flatly contradicted in

---

[67] *See* Exhibit C, Affidavit of Watson,,¶14.

[68] [Doc. 1 at ¶91].  In the next paragraph of his Complaint, Doe does say that none of the texts contained any *direct threats* to use the nude and illegal drug use photographs if Rivera would not continue having *sex* with the person sending the messages.  *Id.* at ¶93.  However, whether Mr. Doe was extorting Rivera for sex or to "continue the relationship," these were still attempts to extort Rivera to do something Rivera did not want to do.

[69] *See* Exhibit A, Criminal Investigative file of Watson, DEF 116.

[70] [Doc. 1 at ¶228].

the record. First, Rivera told[71] Detective Watson that this was Doe's number.[72] Second, *someone* from this number sent Rivera messages about going to San Diego for medical treatment – as well as images of a Second Unopposed Motion for Continuance of Revocation Hearing in *United States of American v. David Garland Atwood, II*, criminal case number 3:15-cr-45-HTW-FKB filed 08/16/2017 (submitted by David Garland Atwood, II.)[73] After Detective Watson spoke with Doe's probation officer Shameka Horton, he received the transcript of a hearing where Mr. Doe asked to go to San Diego for medical treatment.[74] Additionally, after Detective Watson ran Mr. Doe's criminal history, he became aware of Doe's many aliases, including David Atwood and David Garland Atwood (the name of the person who submitted the motion mentioned above).[75]

From all of this information, Detective Watson concluded that he had probable cause to believe the 601-383-0061 number was also Mr. Doe's. As such, a reasonable officer in Detective Watson's position with the information he had available to him at the time could easily conclude that

---

[71] Throughout his Complaint, Mr. Doe makes allegations related to Officer Horton's and Rivera's alleged testimony at Doe's revocation hearing as it relates it to Detective Watson's investigation. *See* [Doc. 1, ¶¶143-76]; *e.g.* "After the testimony and evidence at the revocation hearing cast strong doubt... *Id.* ¶185. Detective Watson did not, however, attend Doe's revocation hearing and did not hear either Rivera's or Officer Horton's testimony. *See* Exhibit C, Affidavit of Watson, ¶25.

[72] *See* Exhibit C, Affidavit of Watson, ¶11.

[73] Exhibit B, composite Exhibit Messages, DEF 315-18.

[74] *See* Exhibit A, Criminal Investigative file of Watson, DEF 123-83. "Practical common sense is used to determine whether a reasonable officer could have believed there was a fair probability that" the suspect committed the crime. *Spencer v. Rau*, 542 F. Supp. 2d 583, 592, (W.D. Tex. 2007).

[75] *See* Exhibit A, Criminal Investigative file of Watson, DEF 17-110.

he had probable cause to issue a warrant to arrest Mr. Doe for extortion for favors and currency, and Watson is entitled to qualified immunity as to this claim.

### Using Text Messages and Statements of Dubious Origin to Block Civil Suit

In Claim (3), Mr. Doe alleges that Detective Watson provided text messages and statements of dubious origin to prevent the plaintiff from filing a civil suit against him.  Mr. Doe has not stated why he suspects that the text messages and statements are inaccurate; nor has he presented evidence to support this allegation.  In addition, it is not clear how the text messages and statements might prevent Mr. Doe from filing a civil suit arising out of these matters.  It appears that he could file such a suit and resolve the validity of those statements and messages through discovery.  Detective Watson, who, as discussed above, acted  reasonably in gathering the statements and text messages, providing them for use in obtaining a warrant, and offering testimony before the Grand Jury, is entitled to qualified immunity as to this claim.

### Summary

The discussion above is, of necessity, fact-heavy and convoluted; as such, the court offers a condensed discussion to clarify its reasoning.  Claims (1) and (2) involve establishing probable cause.  Claim (1) is whether Brett Watson had established probable cause to arrest Mr. Doe.  Claim (2) is whether Watson provided incomplete or unreliable evidence and testimony to the Grand Jury to determine whether probable cause existed to proceed with prosecution.[76]  As detailed above, Detective Watson has provided numerous documents showing the evidence he had at his disposal before Mr. Doe's arrest – and prior to Grand Jury proceedings.  Neither of these situations involves a criminal

---

[76] Mr. Doe has not made clear precisely what evidence Detective Watson presented to the Grand Jury that might have been incomplete or unreliable.  In addition, there is no transcription of the Grand Jury proceedings.

defendant's presentation of evidence; instead, the arresting officer must have information at his disposal which he believes to support the arrest – or the prosecutor must present evidence to the Grand Jury he believes sufficient to support an indictment.  In neither case does the State have to consider or present exculpatory evidence.  *See United States v. Williams*, 504 U.S. 36, 37, 112 S. Ct. 1735, 1736, 118 L. Ed. 2d 352 (1992) (the state is not required to present exculpatory evidence to the grand jury).  Claim (3) appears to involve the same evidence as in Claims (1) and (2).

Mr. Doe was charged in state court with knowingly exposing another person to HIV under Miss. Code Ann. § 97-27-14(1), which states:

> It shall be unlawful for any person to knowingly expose another person to human immunodeficiency virus (HIV), hepatitis B or hepatitis C.  Prior knowledge and willing consent to the exposure is a defense to a charge brought under this subsection. A violation of this subsection shall be a felony.

Miss. Code. Ann. § 97-27-14(1).

Prior to arresting Mr. Doe, Detective Watson had information tending to support each of the elements of this offense.  Detective Watson had statements from the victim that he and Mr. Doe had completed sexual acts, text messages to that effect, and information from several sources that Mr. Doe was HIV-positive at that time (including a court transcript of Mr. Doe's *own testimony*.)  The victim also told Detective Watson that he did not know that Mr. Doe was HIV-positive when they had sexual relations.  This evidence is sufficient to establish probable cause for a police officer to arrest, as well as for a grand jury issue an indictment to proceed with prosecution under Miss. Code Ann. § 97-27-14(1).  Detective Watson stated in his affidavit that he "testified at the grand jury consist[ently] with everything in my investigative report, the statements taken from [the victim], the information located on [the victim's] phone, and the information I provided to get the two warrants."  Doc. 167-3 at 3.  Mr. Doe has offered no evidence to suggest otherwise.

Mr. Doe was also charged with extortion under Miss. Code Ann. § 97-3-82, which reads, in relevant part:

> A person is guilty of extortion if he purposely obtains or attempts to obtain property of another or any reward, favor, or advantage of any kind by threatening to inflict bodily injury on any person or by committing or threatening to commit any other criminal offense, violation of civil statute, or the public or private revelation of information not previously in the public domain for the purpose of humiliating or embarrassing the other person, without regard to whether the revelation otherwise constitutes a violation of a specific statute.

Miss. Code. Ann. § 97-3-82.

Mr. Doe alleges that the "threatening text messages were allegedly extracted from Defendant Rivera's cell phone which were shown to have occurred in July 2016 when [he] was incarcerated at F.C.I. Butner." [Doc. 189] at Plaintiff's Affidavit ¶ 4. Mr. Doe has repeatedly argued that text messages from 2016 were used to establish probable cause in his criminal case, but the evidence shows otherwise. Detective Watson relied only upon text messages from *2017* in making his probable cause determination. *See* [Doc. 168] at pgs. 5-6 fns. 20-27; pg. 15 fn. 59; pg. 18 fn. 76. In addition, Detective Watson's warrant for extortion specifically states that the threatening text messages sent by Mr. Doe were between August 1, 2017, and August 24, 2017. [Doc. 167-1] at DEF 116. Hence, as the information Detective Watson used to support the warrants arose out of text messages from 2017, any text messages from 2016 are irrelevant to his probable cause determination. A determination of the reliability of the cell phone extraction because of text messages from 2016 is simply not material to the outcome of Detective Watson's pending motion for summary judgment.

In the text messages attributed to Mr. Doe, he repeatedly threatened to expose the victim's drug use, nude photographs, and other illegal and potentially embarrassing private matters to his family, friends, school, and law enforcement in an attempt to coerce the victim to "keep his promises," one of which, the victim told Detective Watson, was to return some money Mr. Doe had given him as

a gift. The texts also revealed that Mr. Doe attempted to extort sexual favors from the victim in this way. Indeed, the victim stated that the text messages were from Mr. Doe, and the text messages themselves contained references to facts involving the plaintiff (such as a possible trip to San Diego for medical treatment – the subject of a hearing in federal court). The texts and statements established probable cause to arrest Mr. Doe for extortion. As discussed above, neither Detective Watson nor the prosecutor were required to consider exculpatory evidence during the probable cause determination for arrest or the grand jury. Thus, claims (1) and (2) regarding probable cause will be dismissed under the doctrine of qualified immunity.

Finally, in Claim (3), Mr. Doe alleges that Detective Watson provided text messages and statements of dubious origin to prevent the plaintiff from filing a civil suit against the defendant. As stated above, it is unclear how the text messages and statements might prevent Mr. Doe from filing a civil suit; indeed, Mr. Doe could file such a suit and resolve any issues regarding the statements and messages in question through discovery.

Put simply, a competent law enforcement officer could have reasonably relied upon the information available to Detective Watson to support an arrest on the charges of knowingly exposing a victim to HIV – and extortion. He was not required to collect or consider exculpatory evidence, and the evidence at hand easily established probable cause to effect Mr. Doe's arrest and to move forward with prosecution. Finally, Mr. Doe has not shown the court how text messages of dubious origin might prevent him from filing civil suit regarding the facts described above. The defendant may thus rely on his defense of qualified immunity in this case.

### Mr. Doe Cannot Prevail on the Merits of His Claims

The court reviewed the merits of Mr. Doe's claims in the sections above discussing the issue of qualified immunity, and the court will not revisit that discussion here. Put simply, Detective Watson

had ample evidence to establish probable cause for both warrants – and before the Grand Jury.  Thus, Claims (1) and (2) regarding probable cause are without substantive merit.  In addition, Mr. Doe's claim that Detective Watson's statements and the text messages he provided somehow blocked Doe from filing a civil suit is also without substantive merit.  As such, the court will issue judgment in favor of Detective Watson on the merits of this claim, as well.

**Conclusion**

For the reasons set forth above, the defendant's motion [167] for summary judgment will be granted, and judgment will be entered in favor of defendant Watson in all respects.  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 27th day of January, 2021.

**/s/ MICHAEL P. MILLS____**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**